IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LLANO FINANCING GROUP, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15 C 7689 |
| STEVEN L. SMITH, CRA and ABSOLUTE APPRAISAL GROUP, INC., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Llano Financing Group, LLC, has sued Steven L. Smith, CRA, and Absolute Appraisal Group, Inc., asserting breach of contract and negligence claims arising from a real estate appraisal Smith completed in 2007. In March 2016, the Court dismissed Llano's breach of contract claim for failure to state a claim and granted Llano twenty-eight days to amend its tort claims to show that it was the real party in interest or to join the real party in interest if the right to sue was held by someone else, as required under Federal Rule of Civil Procedure 17. *See Llano Fin. Grp., LLC v. Smith*, No. 15 C 7689, 2016 WL 1161312 (N.D. Ill. Mar. 24, 2016). Llano has filed a second amended complaint asserting the same three claims, and defendants have moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). For the reasons stated below, the Court denies defendants' motion.

## Background

The Court takes the following facts from Llano's complaint, accepting them as

true for present purposes. *See Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016); *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

In or around January 2007, Mitko Marguin applied for a loan from Impac Funding Corporation to refinance a mortgage on real estate located in Algonquin, Illinois. Allied Home Mortgage Capital Corporation, on behalf of Impac, ordered a written appraisal report from defendants for the residential property Marguin planned to use as security for the loan.

In the appraisal, defendants certified that they performed the appraisal in accordance with professional standards, developed their opinions of the property's market value based on sales comparisons and reliable data, and took into account factors that would impact the property's value. They also certified that:

> [t]he borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

2d Am. Compl., dkt. no. 25, ¶ 18; Pl.'s Ex. D, dkt. no. 25-4, at 9. Defendants appraised the property at $420,000. Shortly thereafter and in reliance on the accuracy of defendants' appraisal, Impac funded a loan to Marguin in the amount of $247,000, secured by the property.

Following the economic collapse of 2008, Marguin—and hundreds of thousands of others—defaulted. Deutsche Bank National Trust Company, the trustee of a trust that by this point apparently owned the loan, foreclosed on the property on April 10, 2013. The property was sold on April 11, 2014, for substantially less than $420,000.

Llano's second amended complaint alleges that defendants' appraisal was

negligently prepared and contained material misrepresentations regarding the property and that as a result Marguin's loan was significantly under-secured. According to the second amended complaint, the market value of the property at the time Impac funded the loan was far less than $420,000. Llano alleges that Impac would not have funded the loan had it known the true market value of the property. Although the price paid for the property is not indicated in the second amended complaint, it is alleged that Deutsche Bank took a loss of $216,083.92.

Neither Deutsche Bank nor Impac, however, brought this suit. Instead, it was Llano that sued defendants in August 2015, asserting claims for breach of contract, negligent misrepresentation, and professional negligence. Llano amended its complaint in November 2015. There it explained why, in its view, it had the right to bring suit against defendants despite the fact that Impac funded the loan and Deutsche Bank was trustee of the trust that owned the loan. In its first amended complaint, Llano purported to sue in its capacity as an "agent" for Impac, which was also "the master servicer" for Deutsche Bank. Am. Compl., dkt. no. 17, ¶ 3. According to Llano, Deutsche Bank authorized Impac to "assign certain servicing functions and other duties to Savant LG, LLC," *id.*, including "any and all legal rights that it possessed to assert damage and negligence claims . . . against real estate appraisers and other tortfeasors . . . relating to certain loans [Impac] service[d], including [Marguin's loan]." *Id.* ¶ 4. Impac did this, and Savant in turn "delegated and assigned its duties, authority and legal rights to pursue" these tort claims against defendants to Llano. *Id.* ¶ 5.

Defendants moved to dismiss Llano's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, they argued that Llano lacked constitutional

standing because the complaint did not allege that Llano had any personal stake in the outcome of the litigation. Second, defendants argued that Llano failed to demonstrate that it was the real party in interest as required under Rule 17 because the amended complaint did not plead that the purported assignors relinquished their rights to sue based on the injuries Llano alleged on their behalf. Third, defendants argued that Llano failed to state claims under Illinois law for breach of contract, negligent misrepresentation, and professional negligence.

The Court dismissed Llano's first amended complaint in March 2016. *See Smith*, 2016 WL 1161312, at *4. The Court rejected defendants' argument that Llano failed to properly allege facts that demonstrated Llano had constitutional standing to sue. The Court also rejected defendants' argument that the first amended complaint failed to state claims for negligent misrepresentation and professional negligence. But the Court agreed that Llano failed to state a claim for breach of contract, dismissing this claim with leave to amend. The Court also agreed with defendants that the amended complaint did not sufficiently show that Llano was the real party in interest and was in a proper position to bring a suit based on defendants' alleged negligence. The Court found that it was insufficient under Rule 17 for Llano to make bare allegations that, at some point in time, Deutsche Bank came to own the note memorializing Impac's loan to Marguin, at which point Deutsche Bank made some kind of assignment to Impac, which made some kind of assignment to Savant, which made some kind of assignment to Llano. Pursuant to Rule 17(a)(3), the Court granted Llano twenty-eight days "to amend its complaint again to attempt to cure this defect in the current complaint or to join the real party in interest if the right to sue is held by someone other than, or in addition to, Llano itself."

4

*Id.* at *2.

Llano filed a second amended complaint on April 18, 2016. In it, Llano alleges that it is suing "in its capacity as assignee for" Impac, "the master servicer for" Deutsche Bank, trustee of the trust that owns the loan Impac funded. 2d Am. Compl., dkt. no. 25, ¶ 3. Llano has attached as an exhibit to the second amended complaint the Master Servicing Agreement between Deutsche Bank and Impac, which Llano contends grants Impac "the authority and right to assign certain servicing functions and other duties to Savant LG, LLC." *Id.* Llano has also attached as an exhibit the appraisal Smith completed, which indicates that the "Lender/Client" was an entity known as "Allied Home Mortgage Capital Corp." *See* Pl.'s Ex. D, dkt. no. 25-4, at 3, 4, 9.

Llano alleges that "Impac assigned any and all legal rights that it possessed to assert damage and negligence claims . . . against real estate appraisers and other tortfeasors . . . relating to certain loans it services, including this Loan, to Savant." 2d Am. Compl., dkt. no. 25, ¶ 4. To establish that Savant received a proper assignment from Impac, Llano has attached as an exhibit to the second amended complaint a copy of the Assignment of Rights Agreement between Impac as assignor and Savant as assignee. Llano contends that this agreement authorizes Savant "to pursue such Tort Claims in its own name or assign such Tort Claims to a claim servicing entity . . . to initiate litigation against said Tortfeasors." *Id.*

Llano alleges that pursuant to the Assignment of Rights Agreement, "Savant delegated and assigned its duties, authority and legal rights to pursue the Tort Claims against Defendants herein to [Llano] as the [claim servicing entity]." *Id.* ¶ 5. To establish that this delegation and assignment occurred, Llano has attached as an

exhibit to the second amended complaint a copy of the Purchase of Rights Agreement between Savant and Llano. See Pl.'s Ex. C, dkt. no. 25-3, at 2.

Aside from the allegations devoted to detailing the series of assignments that led Llano to allegedly possess the right to sue for Deutsche Bank's losses, Llano's second amended complaint is essentially identical to its first amended complaint. Rather than amending the breach of contract claim the Court dismissed with leave to amend, Llano has reasserted the claim verbatim as count 1 for the sole purpose of preserving the issue for appeal. Count 2 alleges negligent misrepresentation, and count 3 alleges professional negligence. Defendants have moved to dismiss Llano's second amended complaint in its entirety.

**Discussion**

Defendants contend that all three of Llano's claims must be dismissed. First, defendants move to dismiss Llano's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Llano lacks standing to sue. They also argue that even if Llano has standing to sue, Rule 17 requires dismissal because Llano is not the real party in interest. Second, defendants argue that the Court lacks subject matter jurisdiction over this suit because Llano has failed to demonstrate complete diversity of citizenship. Third, defendants seek dismissal under Rule 12(b)(6), arguing that Llano has failed to state a negligent misrepresentation or professional negligence claim.[1]

---

[1] Defendants reiterate that Llano has not pleaded a cognizable claim for breach of contract. See Def.'s Mem., dkt. no. 32, at 21. Llano has not revised this claim since the Court dismissed it in March, and Llano does not argue against its dismissal or that the Court should reconsider its prior ruling. The Court therefore does not address Llano's breach of contract claim, except to say that it remains dismissed.

6

**A.	Subject matter jurisdiction and real party in interest**

To demonstrate standing, a litigant must "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691–92 (7th Cir. 2015) (citing *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013)). Litigants can challenge standing as a facial matter or as a factual matter. *See Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). A facial challenge requires a court to look to the complaint to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *Id.* at 443. A factual challenge exists where the complaint is sufficient but the movant contends that there is *in fact* no subject matter jurisdiction. *Id.* at 444. Where, as in this case, a defendant mounts a factual challenge to a plaintiff's standing, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008).

As they did in their previous motion to dismiss, defendants argue that Llano lacks standing to sue because it has not pleaded that it has any "personal stake" in the litigation. The second amended complaint alleges that Trust SAC 2007-3—of which Deutsche Bank is the trustee—"owns the loan that is the subject of this suit." 2d Am. Compl., dkt. no. 25, ¶ 3. Defendants argue that because Llano does not own the loan and has not alleged that it is entitled to keep any proceeds recovered through this litigation, Llano has no personal stake and can thus not allege a judicially redressable injury-in-fact.

The Court disagrees. As before, Llano alleges that Deutsche Bank administers the trust that owns the loan at issue and assigned its rights to sue to Impac. Impac then transferred those rights to Savant, which transferred its rights to Llano. Llano now seeks to recover based on the losses Deutsche Bank suffered. Put differently, Llano claims that Deutsche Bank suffered pecuniary losses (injury-in-fact) as a result of defendants' material misrepresentations and professional negligence in drafting the appraisal at issue (traceability), and seeks remuneration through adjudication of judicially cognizable claims (redressability).

Defendants' problem with Llano's suit is not that a loan owner lacks standing to sue an appraiser when the appraiser's negligence causes the loan to be under-secured, but rather that a third party cannot maintain a lawsuit predicated on an injury suffered by another. But, as the Court has previously noted, "[a]lthough Illinois continues to adhere to the longstanding tradition of prohibiting the assignment of personal injury tort claims, commercial torts and professional negligence claims are assignable under Illinois law." *Llano Fin. Grp., LLC v. Lendzion*, No. 15 C 7091, 2016 WL 930660, at *4 (N.D. Ill. Mar. 11, 2016) (citing *Daugherty v. Blaase*, 191 Ill. App. 3d 496, 500, 548 N.E.2d 130, 132 (1989)); *see also Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 762 (7th Cir. 2008) ("Under Illinois law, a chose in action is assignable personal property. . . . Following a valid assignment, the assignee may bring an action in his own name.") (internal citation omitted). If Llano has obtained a valid assignment of Deutsche Bank's chose in action, it can assert a claim under Illinois law and has standing to sue in federal court. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008).

Defendants next argue that Llano's suit must be dismissed because Llano is not

8

the real party in interest. "Both standing and real party in interest are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits." *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993). Standing and real party in interest, however, are distinct concepts. *See FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). A plaintiff has standing if she alleges an injury in fact that is traceable to the defendant's conduct and redressable by a favorable decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A plaintiff is the real party in interest where it actually possesses the particular right sought to be enforced. *See Rawoof*, 521 F.3d at 756, 757. Standing is jurisdictional; the real party in interest doctrine is not. *Id.* at 756 (quoting *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 747 (7th Cir. 2007)).

The question of who is the real party in interest in a diversity suit is determined by looking to state law. *See Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). As mentioned above, Illinois law permits the assignment of commercial tort and professional negligence claims. Such claims, however, must transfer the assignor's interest in a way that protects the defendant against repeat liability. As this Court previously noted, the advisory committee notes to Federal Rule of Civil Procedure 17 (the real-party-in-interest rule) explain that "the purpose of the doctrine is 'to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" *Lendzion*, 2016 WL 930660, at *4 (quoting Fed. R. Civ. P. 17(a), Advisory Committee Notes (1966)).

Defendants' argument for dismissal of Llano's first amended complaint was that

the Court could not assess whether Llano was the real party in interest without seeing the assignment documents proving that it had the right to bring suit in its own name based on the losses sustained by the trust Deutsche Bank administers. As they do now, defendants cited an Illinois procedural rule that requires assignees suing in their own name (albeit in a slightly different context) to file verified complaints and attach assignment documents to those complaints so a court may verify that a valid assignment authorizes the plaintiff's suit. *See Unifund CCR Partners v. Shah*, 2013 IL App (1st) 113658 ¶ 16, 993 N.E.2d 518, 524–25 (2013) (citing 735 ILCS 5/2–403). The Court expressed skepticism "that federal law requires Llano to do this much; Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to furnish only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and federal courts sitting in diversity apply federal procedural law." *Lendzion*, 2016 WL 930660, at *4 (internal citation omitted).

Still, to address the Court's concern that the first amended complaint was too light on information about each assignment "for the Court to determine whether Deutsche Bank and its other assigns, Impac and Savant, have fully relinquished the right to sue that Llano asserts," *id.*, Llano attached the relevant portions of each document to its second amended complaint. Defendants' argument now is that the documents demonstrate that (1) Deutsche Bank has never owned a chose in action it could assign; (2) Deutsche Bank did not assign the right to sue defendants to Impac; and (3) Impac was not authorized to assign its right to sue to Savant, and in any event failed to effectively do so.

Defendants' first contention is that Llano is not the real party in interest because

the appraisal Smith performed indicates that Allied Home Mortgage Capital Corporation was the lender that ordered the appraisal, not Impac.  Defendants argue that Llano cannot possess a right to sue because Llano has not shown that Allied made an assignment or has been divested of its right to sue on its own behalf.  Indeed, there are no allegations in the second amended complaint concerning Allied, and Llano has attached no documents to the complaint indicating that Allied transferred rights to anyone.

None of this matters.  Regardless whether Allied was the lender that requested the appraisal in the first instance, Llano alleges that Impac was the lender that funded the loan to Marguin and that Trust SAC 2007-3 owns the loan.  Llano also alleges that the appraisal stated that the "borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns . . . may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties." 2d Am. Compl., dkt. no. 25, ¶ 18; Pl.'s Ex. D, dkt. no. 25-4, at 9.  Even if Allied was never involved in a mortgage transaction with Marguin, Impac allegedly was.  The complaint sufficiently alleges that defendants represented through the appraisal that a party participating in a mortgage finance transaction with Marguin could rely on the appraisal and that Impac did just that.  At the dismissal phase, Llano need not produce evidence proving that Impac relied on defendants' appraisal and funded the loan.

The same can be said of the loan's transfer from Impac to Trust SAC 2007-3.  It is enough for Llano to allege that the trust came to own the loan; Llano need not produce evidence that proves this allegation.  Defendants argue that merely alleging that the loan was assigned to the trust with the appraisal is not enough to comply with

the procedural requirements of 735 ILCS 5/2–403(a). But as the Court explained above, section 2–403(a) is a procedural rule dictating the form an assignee's complaint must take when filed in Illinois state court, and federal courts sitting in diversity apply state substantive law and federal procedural law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 831 (7th Cir. 2015). Defendants offer no authority for the proposition (indeed, do not even appear to argue) that section 2–403(a) is substantive rather than procedural. Llano's allegation that the trust owns the loan is sufficient under Federal Rule of Civil Procedure 8(a).

Defendants next contend that Llano has failed to plausibly allege that Deutsche Bank fully assigned its rights to Impac. They point out that the master servicing agreement does not expressly state that it applies to this loan or appraisal and that the language of the agreement limits Impac's power to sue and does not divest Deutsche Bank of its right to sue. The Court is not persuaded. Llano alleges that Impac has the right to sue as Deutsche Bank's master servicer. It has also attached a copy of the agreement that indicates that "[i]f permitted under applicable law without prejudicing any rights of the Trust Fund with respect to any Mortgage Loan, [Impac], with such documentation as local law requires, acting in its own name, may pursue claims on behalf of the Trust Fund." Pl.'s Ex. A, dkt. no. 25-1, at 3–4. Llano has adequately alleged that Impac was assigned the right to sue as Deutsche Bank's master servicer.

According to defendants, this does not matter because Impac did not effectively assign these rights to Savant. Defendants argue that Llano has inadequately alleged that Impac assigned the right to sue to Savant and that the master servicing agreement between Deutsche Bank and Impac belies this allegation because it does not authorize

12

Impac to make such assignments. Specifically, defendants point to Section 3.02 of the agreement, which states that Impac "may enter into Sub-Servicing Agreements with Sub-Servicers for the servicing and administration of the Mortgage Loans" but that any such sub-servicer "shall be a Freddie Mac or Fannie Mae approved mortgage servicer." *Id.* at 5. Defendants say that because Llano has not pleaded or shown that Savant is a Fannie Mae or Freddie Mac approved servicer, any assignment of rights Impac may have made to it would not be valid under the master servicing agreement.

This is an unnecessarily narrow reading of the master servicing agreement. The agreement says that "the Master Servicer, in its capacity as master servicer, and any Sub-Servicer acting on its behalf" shall have the authority to administer and service mortgage loans that the trust fund owns through foreclosure, filing and collection of insurance claims, and collection actions on delinquent payments, among other things. *Id.* at 3. It also—separately—authorizes Impac to pursue the trust's claims in its own name. The provisions defendants cite reasonably may be read to require sub-servicers enlisted to service and administer mortgage loans to be approved for mortgage servicing by Fannie Mae or Freddie Mac. Llano does not allege, however, that Impac contracted with Savant for the servicing and administration of a mortgage loan. Rather, Llano alleges that Impac assigned the right it possessed to "pursue claims on behalf of the Trust Fund" to Savant. The master servicing agreement does not undermine Llano's claim that Impac assigned this chose in action to Savant, especially in light of the "Common Interest and Assignment Agreement" Llano attached to its response memorandum. *See* Pl.'s Ex. 1, dkt. no. 41-1, at 1 ("[Impac] does hereby assign to [Savant] all rights, title and interest to and under the real estate appraisal of [the

13

Marguin property] performed for Loan #[redacted].").

Llano has also plausibly alleged that it received a full assignment of Deutsche Bank's chose in action from Savant. Defendants argue that the purchase of rights agreement between Savant and Llano does not specifically name the loan and appraisal at issue and that the "appraisal rights schedule" is not clearly defined in that document. Neither of these arguments has merit. The purchase of rights agreement states that Llano owns "all of [Savant's] right, title, and interest to the Appraisal Rights, in contract and in tort, in regards to the Appraisals on the Appraisal Rights Schedule." Pl.'s Ex. C, dkt. no. 25-3, at 3. It also includes a loan schedule that purportedly includes the present loan. This document lends context to the allegation that Llano acquired full rights to the claims it advances here; it need not be more specific to provide the clarity the Court needs to determine that Llano is the real party in interest.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide "a short and plain statement of the claim showing it is entitled to relief." Fed. R. Civ. P. 8(a). Llano insists that it should not have been required to submit documentary evidence to support its claim that it is the real party in interest because Rule 8 does not shoulder plaintiffs with so heavy a burden. The Court, however, did not instruct Llano that it was required to submit documentary evidence. Rather, the Court made clear that "the paucity of factual information" on the multiple alleged assignments rendered it "impossible for the Court to determine whether Deutsche Bank and its other assigns, Impac and Savant, have fully relinquished the right to sue that Llano asserts." *Lendzion*, 2016 WL 930660, at *4. Rather than pleading more factual details to nudge its claims from possible to plausible, Llano attached the documents that authorize and effectuate the assignments

in question. The allegations in the second amended complaint, together with the documents Llano has provided, are sufficient to show that Llano is the real party in interest under Rule 17.

Finally, defendants contend that Llano's second amended complaint must be dismissed for lack of subject matter jurisdiction because it has "failed to allege that diversity jurisdiction in this Court is proper." Def.'s Mem., dkt. no. 32, at 17. Defendants note that Llano's new complaint does not indicate the citizenship of either Impac or Deutsche Bank. Although they acknowledge that Llano "has now excised any reference to its status as an agent of Impac in the allegations of its [second amended complaint]," defendants contend that "the exhibits Llano now attaches disclose Impac, from whom Llano's alleged rights flow, to be nothing more than an agent in the form of an independent contractor." *Id.* at 18.

Specifically, defendants point to language in the master servicing agreement between Deutsche Bank and Impac that designates Impac as an "independent contractor" rather than an assignee. *Id.* Defendants note that although the agreement permits Impac to perform its servicing responsibilities through agents or independent contractors, the agreement states that Impac is "'not thereby . . . released from any of its responsibilities.'" *Id.* (quoting Pl.'s Ex. A, dkt. no. 25-1, at 3). Accordingly, say defendants, Llano must be treated as a sub-agent of Deutsche Bank, Impac, and Savant because "any rights Llano may have are entirely derivative of those invested in Impac, . . . who was not a full assignee of Deutsche Bank's rights regarding the Loan or the Appraisal." Def.'s Mem., dkt. no. 32, at 18. Because Llano has not alleged the citizenship of Deutsche Bank, Impac, or Savant, defendants contend the complaint does

15

not provide the Court with enough information to determine whether it can exercise diversity jurisdiction.

In response, Llano argues that defendants' argument fails, and the cases they cite are inapplicable, because Llano is not an agent suing on its principal's account but an assignee suing on its own behalf as the real party in interest. The Court agrees. As explained above, the master servicing agreement between Deutsche Bank and Impac appears to both (1) authorize Impac to service Deutsche Bank's loans and enlist sub-servicers to service those loans, and (2) empower Impac to "pursue claims on behalf of the Trust Fund." Savant does not appear to be a sub-servicer to which Impac delegated servicing responsibility, but rather an independent contractor to which Impac assigned its right to pursue Deutsche Bank's claims. Savant then assigned its right to sue to Llano, the party that appears to own the right to sue for losses the trust experienced as the result of defendants' alleged negligence. The Court is satisfied that it has subject matter jurisdiction under 28 U.S.C. § 1332 because Llano and defendants are of diverse citizenship and the amount in controversy exceeds $75,000. The Court denies defendants' motion to dismiss under Rule 12(b)(1).

**B.     Failure to state a claim**

Finally, defendants move to dismiss for failure to state a claim under Rule 12(b)(6). When considering a motion to dismiss for failure to state a claim, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Bonnstetter*, 811 F.3d at 973. To state a viable claim, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants contend that Llano's allegation that the property in question turned out to be worth "far less than $420,000" is too conclusory and imprecise for Llano's claim to be plausible on its face. Defendants argue that the second amended complaint "alleges no facts from which one can plausibly infer that the market value of the Property was 'far less' . . . than the $420,000.00 reflected in the Appraisal on January 9, 2007 when it was submitted to Allied and/or Impac." Def.'s Mem., dkt. no. 32, at 19. Although defendants acknowledge that Llano's complaint need not satisfy the particularity requirements applicable to fraud claims under Rule 9(b), defendants argue that "thread-bare and non-concrete allegations concerning the 'true' market value of the Property as of January 9, 2007" do not satisfy Rule 8's pleading requirements and the plausibility standard set forth in *Twombly* and *Iqbal*. Their argument boils down to the assertion that a plaintiff alleging losses based on a miscalculation of a property's true or fair market value must specifically allege the property's true or fair market value at the time of the relevant transaction and must specify the methodology used to calculate that value.

The cases defendants cite in support of their argument are inapposite, and Rule 8 does not require such specificity. The two cases defendants cite dealt with plaintiffs alleging Racketeering Influenced and Corrupt Organizations (RICO) Act and RICO conspiracy violations. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (7th Cir. 2014); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir.

17

1994).  These courts were addressing questions different from the one presented here.

In *Eclectic Properties East*, the Seventh Circuit found threadbare allegations of a

property's fair market value insufficient to plausibly allege that the defendants intended

to defraud the plaintiffs.  See *Eclectic Props. E.*, 751 F.3d at 998–99.  The court

determined that removing a vague allegation of market value would "shrink[] the amount

the property values were alleged to have changed over time," making it less than

plausible that the defendants had the specific intent to defraud the plaintiff.  *Id.* at 999.

Likewise, in *First Nationwide Bank*, the Second Circuit determined that the plaintiff failed

to satisfy Rule 9(b)'s "more stringent pleading requirements" to show that the allegedly

fraudulent misrepresentations caused "substantial" losses and were thus material.  *First

Nationwide Bank*, 27 F.3d at 770, 771.

Llano's claims are not claims sounding in fraud that need to satisfy Rule 9(b), and

Llano does not need to provide detail to render it plausible that defendants had the

specific intent to defraud Impac or anyone else.  Rule 8, *Twombly*, and *Iqbal* merely

require Llano to plausibly allege that defendants' negligent misrepresentations and

professional negligence proximately caused the owner of the loan in question to suffer

losses.  Llano alleges that defendants appraised the property at $420,000 and

represented that a party to a mortgage transaction with Marguin could rely on this;

defendants' appraisal was significantly inflated because they used improper comparable

properties; Impac, in reliance on the appraisal, funded a loan in that amount secured by

the property; when Deutsche Bank took foreclosure action, the security turned out to be

worth a fraction of what the appraisal represented; and Deutsche Bank lost $216,083.92

as a result.  Regardless whether these allegations would be sufficiently particular to

state a claim under Rule 9(b) or to show specific intent to defraud under the RICO Act, they are sufficient under Rule 8.

Defendants contend that Llano's own filing belies its claim that the true market value of the property at the time of the appraisal was dramatically less than the amount defendants estimated, arguing that the appraisal and its associated documents demonstrate $420,000 was the fair market value. This argument does not carry the day because it is properly made after discovery, not at the dismissal stage. Defendants will have an opportunity to argue that the evidence shows their appraisal accurately estimated the fair market value of the property, but first Llano must be allowed the opportunity to adduce evidence of its own showing otherwise.

**Conclusion**

For the foregoing reasons, the Court denies defendants' motion to dismiss [dkt. no. 32], except for count one, which remains dismissed pursuant to the Court's prior ruling. Defendants are directed to answer the remainder of the second amended complaint by no later than August 15, 2016. The case is set for a status hearing on August 19, 2016 at 9:00 a.m. Prior to that date, counsel are to confer to attempt to agree upon a discovery and pretrial schedule to propose to the Court, and they are to discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 29, 2016

19